Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor A. Trinidad Hernández y otros<br><br>    Peticionarios<br><br>       v.<br><br>Estado Libre Asociado y otros<br><br>    Recurridos<br>_____<br><br>María del C. Alvarado Pacheco y otros<br><br>    Peticionarios<br><br>       v.<br><br>Estado Libre Asociado y otros<br><br>    Recurridos<br>_____<br>José A. De Jesús Vera y otros<br><br>    Peticionarios<br><br>       v.<br><br>Estado Libre Asociado y otros<br><br>    Recurridos | Certificación<br><br>2013 TSPR 82<br><br>189 DPR ____ |

Número del Caso: CT-2013-8
                CT-2013-9
                CT-2013-10


Fecha: 9 de julio de 2013


CT-2013-8
Abogado de la Parte Peticionaria:

      Lcdo. Iván Crespo Arroyo


Oficina de la Procurador General:

      Lcda. Margarita Mercado Echegaray

**CT-2013-9**

Abogadas de la Parte Peticionaria:

Lcda. Judith Berkan
Lcda. Mary Jo Meléndez


Abogada de la Parte Recurrida:

Lcda. Beatriz Annexy Guevara

**CT-2013-10**

Abogados de la Parte Peticionaria:

Lcdo. Raúl Santiago Meléndez
Lcdo. Edgar R. Vega Pabón

Abogadas de la Parte Recurrida:

Lcda. Judith Berkan
Lcda. Mary Jo. Meléndez


Materia: *Per Curiam* con Opinión de Conformidad y Opiniones Disidentes


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Víctor A. Trinidad Hernández y otros<br><br>       Peticionarios<br><br>              v.<br><br>Estado Libre Asociado y otros<br><br>       Recurridos<br>_____<br><br>María del C. Alvarado Pacheco y otros<br><br>       Peticionarios<br><br>              v.<br><br>Estado Libre Asociado y otros<br><br>       Recurridos<br>_____<br><br>José A. De Jesús Vera y otros<br><br>       Peticionarios<br><br>              v.<br><br>Estado Libre Asociado y otros<br><br>       Recurridos | CT-2013-0008<br><br>CT-2013-0009<br><br>CT-2013-0010 | Certificación |

RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de julio de 2013.

A las mociones de reconsideración presentadas por las partes peticionarias, no ha lugar.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emitió un Voto Particular Disidente al que se unen los Jueces Asociados señor Kolthoff Caraballo, señor Rivera García y señor Estrella Martínez. Los Jueces Asociados señores Kolthoff Caraballo y Rivera García

reconsiderarían por las razones expresadas en sus respectivas opiniones disidentes en *Trinidad Hernández y otros v. E.L.A. y otros*, CT-2013-8, CT-2013-9, CT-2013-10. El Juez Asociado señor Estrella Martínez reconsideraría por los fundamentos contenidos en su Opinión Disidente en el caso Trinidad Hernández v. E.L.A. y otros, 2013 TSPR ___, res. el 25 de junio de 2013, CT-2013-008, CT-2013-009 y CT-2013-010, y por las consideraciones expuestas por la Jueza Asociada señora Pabón Charneco, contenidas en su Voto Disidente, en el cual discute los argumentos esbozados por la parte peticionaria en su Moción de Reconsideración.

Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Víctor A. Trinidad Hernández y otros | |
| Peticionarios | |
| v. | |
| Estado Libre Asociado y otros | |
| Recurridos | CT-2013-0008 |
| | CT-2013-0009 |
| | CT-2013-0010 |
| María del C. Alvarado Pacheco y otros | |
| Peticionarios | |
| v. | |
| Estado Libre Asociado y otros | |
| Recurridos | |
| José A. De Jesús Vera y otros | |
| Peticionarios | |
| v. | |
| Estado Libre Asociado y otros | |
| Recurridos | |

Voto Particular disidente emitido por la Jueza Asociada señora PABÓN CHARNECO, al que se unieron los Jueces Asociados señores KOLTHOFF CARABALLO, RIVERA GARCÍA y ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 9 de julio de 2013.

> ***Nuestros retos económicos no pueden ser solventados aplastando la dignidad de nuestros servidores públicos. Ante los nuevos retos, son necesarios nuevos pactos y consensos sociales. A éstos no podremos llegar cultivando la desconfianza de los ciudadanos en las instituciones.***
>
> Hon. Liana Fiol Matta, Opinión disidente en *Domínguez Castro v. E.L.A.* I, 178 D.P.R. 1, 157 (2010).

Escribo estas líneas muy consciente del dolor, la angustia y la frustración que sienten miles de empleados públicos luego de que las disposiciones de la Ley Núm. 3-2013 entraran en vigor. No es tarea sencilla aceptar que, en el Estado de Derecho que avala una Mayoría de este Tribunal, el Contrato que firmaron al momento de ofrecer su sudor y su energía al servicio de su país puede ser variado en cualquier momento y sin importar sus repercusiones. Menos fácil debe ser explicarse por qué su Tribunal Supremo, último refugio para hacer valer sus derechos, claudicó a sus funciones y optó por redefinir lo que significa la revisión judicial en controversias como la de estos casos. En un ordenamiento como el nuestro, la "autoridad" es el ejercicio del poder de manera legítima. Hoy, al cerrarle las puertas de este Foro a miles de empleados públicos, una Mayoría ha lacerado su autoridad ante los ojos del Pueblo. Tardará mucho tiempo recobrarla.

Lamentablemente, una mayoría de este Tribunal se niega hoy a reconsiderar la errada decisión que emitió en *Trinidad Hernández v. E.L.A. y otros*, res. el 25 de junio de 2013, CT-2013-8, CT-2013-9 y CT-2013-10. Ante este proceder, y debido a

la muy persuasiva Moción de Reconsideración presentada por la representación legal de los sesenta y ocho (68) empleados de la Oficina del Contralor, me siento obligada a emitir estas breves expresiones.

Como adelanté en mi Opinión disidente de *Trinidad Hernández v. E.L.A. y otros*, supra, el razonamiento defectuoso de la mayoría se debe a dos (2) factores principales. Por un lado, en un afán desmedido y apasionado de resolver de una manera los casos de autos, la Mayoría procedió a consolidar casos disímiles y a analizarlos como si el único argumento presentado por los peticionarios fuera que la Ley Núm. 3, *supra*, era inconstitucional en su totalidad. Por otro, procedió a desvirtuar los principios de *Domínguez Castro v. E.L.A. I*, 178 D.P.R. 1 (2010), *cert.* denegado, *Castro v. Puerto Rico*, 131 S.Ct. 152 (2010), y terminó convirtiendo el rol de los tribunales en casos como los de autos en meros actores autómatas que deben mostrar sumisión total a los otros poderes constitucionales.

Después de estos casos, cabe preguntarse qué valor le queda a la cláusula constitucional contra el menoscabo de obligaciones contractuales. Con su proceder, la Mayoría ha dejado listas las bases para el nacimiento del estado de excepción que presagió Giorgio Agamben[1] y ha convertido nuestra Constitución en un "mero depósito de palabras". El Contrato Social se ha quebrado; lamento que este Tribunal haya dado su anuencia para ello. Nuevamente, debo disentir.

---

[1] G. Agamben, *Estado de Excepción*, Buenos Aires, Adriana Hidalgo Editores, 2004.

I

Una Mayoría de este Tribunal yerra al dar un análisis somero y pasajero a la Ley Núm. 3, *supra*, a pesar de que en los casos de autos existían diferentes grupos de empleados que cuestionaron la inconstitucionalidad de su aplicación y de algunas de sus secciones. Para no tener que pasar el trabajo de diferenciar, analizar y verificar si la Ley Núm. 3, *supra*, era razonable para con este universo diverso de servidores públicos, la Mayoría del Tribunal decidió obviar que en Puerto Rico existen tres (3) estructuras de Retiro, que contienen empleados con características distintas entre sí y cuya aplicación los afecta de manera variada. Claro, era mucho más fácil para la Mayoría del Tribunal declarar constitucional de un plumazo la totalidad de un estatuto tan abarcador y con repercusiones increíblemente diversas. Como adelanté en ese momento, con doce (12) páginas de análisis judicial, algo muy distinto a lo que ocurrió en *Domínguez Castro y otros v. E.L.A I*, supra, se le dio "revisión judicial" a un estatuto de la magnitud de la Ley Núm. 3, *supra*.

Por su excelente rigor analítico en cuanto a este aspecto, paso a citar *in extenso* de la Moción de Reconsideración presentada por algunos de los peticionarios de autos:

> Este Tribunal se equivocó al tratar el caso [de autos] como un monolito. Agrupó a todos los peticionarios sin considerar las diferencias sustanciales en relación con el impacto de la Ley 3 aplicables a los diferentes pleitos. Tan es así que en su resumen de los planteamientos de los peticionarios este Tribunal expresó que "las partes demandantes solicitaron...que declarara inconstitucional la Reforma de Retiro." *Decisión Per Curiam, a la pág. 3.*

No se trata de "todo o nada". Los 68 empleados de la Oficina del Contralor solicitaron que el TPI dictara "una Sentencia Declaratoria decretando que la Ley 3 es inconstitucional [únicamente] en la medida en que cambia el sistema de retiro en relación con las personas...de la primera estructura del Sistema de Retiro con la expectativa de que iban a poderse jubilar con los beneficios otorgados por la Ley 447." Petición del 8 de mayo, a la pág. 46, Ap. 46. **<u>Nada impedía que este Tribunal declarara inconstitucional la aplicación [de] la Ley 3 a los peticionarios, mientras decidiera que otras secciones de la Ley 3 eran medidas razonables y necesarias</u>**. Este Tribunal, al consolidar los casos, abdicó su responsabilidad de sopesar los intereses en conflicto y determinar si la totalidad o en su lugar algunas partes de la Ley 3 lesiona[b]a[n] injustificadamente los derechos adquiridos de ciertos empleados.

Est[e] fue el resultado en *Strunk v. Public Employees Ret. Bd*, 108 P.3d 1058, 1112 (Oregon, 2005), en [el] cual el Tribunal Supremo de Oregon consideró la constitucionalidad de una Reforma integrada y abarcadora llamada "PERS Reform and Stabilization Act of 2003". El Tribunal [Supremo] de Oregon hizo un análisis concienzudo de las particularidades del Sistema de Retiro y diferenció entre los derechos que cobijaban distintas clases de participantes. El Tribunal [Supremo] de Oregon explicó la diferencia entre los participantes del "Tier One", quienes entraron en el empleo público antes de 1996 y empleados del "Tier Two". Después de una discusión profunda de las distintas fórmulas para calcular las anualidades de los jubilados, además de cada disposición de la referida Reforma y a la luz de la evidencia extensa que fue presentada en un juicio en los méritos sobre el estatus fiscal del fondo, el Tribunal determinó que ciertas disposiciones violaron la protección en cuanto al menoscabo de las relaciones contractuales y avaló la constitucionalidad de otras disposiciones de la Reforma.

El análisis hecho por el tribunal de *Strunk* dista mucho de la discusión somera que hizo este Honorable Tribunal en el caso de epígrafe. La mayoría de este Honorable Tribunal no consideró en lo absoluto las diferencias entre las distintas disposiciones de la Ley

3. Consolidó los casos y los trató por igual. Respetuosamente se somete que la consolidación, en combinación con la preocupación legítima sobre la precariedad del Sistema, cegó al Tribunal en relación con su deber de sopesar los intereses en conflicto en este caso, a la luz de las particularidades de cada caso.[2]

Si se contrasta la decisión del Tribunal Supremo de Oregón en *Strunk v. Public Employees Ret. Bd*, supra, con la que emitió este Foro podemos ver patentemente la diferencia entre un Tribunal que ejerció efectivamente su poder de revisión judicial y otro que claudicó ante el momento histórico. Desde hace tiempo se viene advirtiendo que la litigación en cuanto a los sistemas de retiro culminaría indudablemente ante la consideración de los tribunales de las diferentes jurisdicciones. K.T. Cuccinelli et al., *Judicial Compulsion and the Public Fisc – An Historical Overview*, 35 Harv. J.L. & Pub. Pol'y 525 (2012). Ciertamente, ante los problemas económicos que enfrenta el mundo en estos tiempos los tribunales deben ser cuidadosos en el ejercicio de sus funciones. Pero para ser cuidadosos no hay que entregarse a las otras Ramas constitucionales. El Tribunal Supremo de Oregón supo cómo enfrentarse a esa delicada situación y analizó una reforma de retiro de manera concienzuda. Entre otras cosas, se nombró un Comisionado Especial que recibió la abundante prueba y se analizó la aplicación de la reforma a los diferentes grupos de empleados que forman parte del Sistema. Y es que ese Tribunal comprendió que no es lo mismo un empleado joven que tiene el tiempo necesario para repensar su situación económica cuando se jubile y otro que está a las puertas del retiro y que

---

[2] Moción de Reconsideración, CT-2013-9, págs. 5-6 (Énfasis suplido).

sencillamente de hoy en adelante ve todo su futuro económico destruido. Sin embargo, este Tribunal se perdió en el bosque en vez de detenerse a ver los árboles, y en el afán de resolver atropelladamente los casos, decidió agrupar a los empleados como si los efectos de la Ley Núm. 3, *supra*, fueran igual para todos.

Como coherentemente han alegado los peticionarios en su moción de reconsideración, este Tribunal tuvo alternativas para analizar correctamente los casos de autos. No tenía por qué analizar a la ligera los mismos, cuando pudo muy bien realizar un estudio minucioso de la Ley Núm. 3, *supra*, y determinar que algunas de sus disposiciones específicas resultaban inconstitucionales por ser irrazonables en su aplicación. Con el rumbo contrario que decidió tomar una Mayoría de este Tribunal, se obviaron los efectos devastadores que tiene el estatuto y que inciden en el estándar de racionalidad que debió aplicar este Foro. Como muy bien discuten los peticionarios,

> [e]n el caso de los 68 [empleados] de la Oficina del Contralor, el impacto de la Ley 3 es devastador. Lo crucial aquí no es que los 68 van a tener que trabajar unos años adicionales, ni es el aumento en sus aportaciones al plan de retiro. Lo que realmente impacta a los peticionarios es que su anualidad anticipada será drásticamente reducida. Es esta reducción drástica [la que estaba en controversia].
>
> A manera de ejemplo, veamos el caso de la peticionaria María del Carmen Estarellas Sabater, quien ha sido participante del Sistema por 26 años y cuenta con 54 años de edad. Petición, Apéndice a la página 4 párrafo 3.3 (20). Éste sería el escenario de la señora Estarellas al momento del retiro antes y después de la

vigencia de la Ley 3 asumiendo que devengara un salario promedio de $3,000 mensuales:[3]

|  | Ley 447 | Ley 3 | Diferencias con Ley 3 |
|---|---|---|---|
| **Edad de Retiro** | 58 años de edad | 61 años de edad | 3 años más de empleo |
| **Beneficio Definido** | 75% de su retribución promedio | 42% de su retribución promedio | Recibe 33% menos de su retribución promedio |
| **Si su salario fuese $3,000 mensuales** | $2,225.00 mensuales | $1,260.00 mensuales(1.5% x 20 años) + (2% x 6 años) | $965.00 menos de beneficio para una reducción porcentual de 43% de ingreso mensual |

No comprendo como una Mayoría de este Tribunal se negó a ponderar detenidamente este impacto tan severo. No hay manera de concluir que un daño tan sustancial a algunos empleados públicos específicos pueda sobrevivir un estándar de razonabilidad. A menos que, *de facto*, ese no sea el estándar que deben aplicar los tribunales en Puerto Rico.

II

Y he ahí el problema principal del razonamiento de una Mayoría de miembros de este Foro. Con sus meras doce (12) páginas y su análisis judicial elemental, la Mayoría ha llevado el *ratio decidendi* de *Domínguez Castro y otros v. E.L.A. I*, supra, a fronteras inimaginables. Más allá de la controversia en cuanto al peso de la prueba en los casos de autos, o si existían otras medidas menos onerosas, el problema del manejo de estos

---

[3] *Íd.* pág. 4.

casos fue que este Tribunal promovió una imagen de que los trató como si no hubiera otra alternativa: *tenía* que declarar la Ley Núm. 3, *supra*, constitucional. En el camino, el estándar jurídico para analizar estas controversias se convirtió en una mera fórmula matemática:

> *Obligaciones contractuales* **+** *Alegada crisis económica* **+** *exposición de motivos que lo diga* **x** *deferencia judicial absoluta* **=** *constitucionalidad del estatuto*

De ahora en adelante, ¿de qué sirve reconocer un Contrato en el cual el Estado puede alterar sus términos, independientemente del número de empleados que afecte? ¿De qué sirve tener disponible la revisión judicial si el Tribunal Supremo ni siquiera analizará el impacto específico de las medidas debido a una deferencia absoluta que hay que brindarles a las otras ramas? Reitero, esa no es la base de *Domínguez Castro v. E.L.A. I*, supra. En controversias como las de autos, se le cerró la puerta a la revisión judicial efectiva en nuestro ordenamiento y se le dejó claro a las otras ramas que, a expensas de nuestros servidores públicos, tendrán nuestra deferencia **total** y **sumisa**. Lamento que cinco (5) de mis compañeros le hayan otorgado ese cheque en blanco a las otras ramas. No tengo otra alternativa que disentir de ese proceder.


                                    Mildred G. Pabón Charneco
                                    Jueza Asociada